[No. 20574. *En Banc.* October 31, 1927.]

## In the Matter of the Estate of Martha J. Lee, Deceased.

## Henry E. Dunn, *Appellant,* v. Harry R. Rogers, *Respondent.*[1]

[1] APPEAL (326, 340)—RECORD—TRANSCRIPT—BRIEFS—FAILURE TO FILE IN TIME. The statute fixing the time for the preparation and filing of the transcript on appeal with the clerk of the superior court and the filing of briefs and transmission of the record to the supreme court is not mandatory, and an appeal should not be dismissed for delay beyond the four month's limit, without an opportunity to supply the record, when there was no untimely delay affecting the time of the hearing (overruling on rehearing Id., 144 Wash. 564, 258 Pac. 507).

[2] WILLS (7, 20)—TESTAMENTARY CAPACITY — UNDUE INFLUENCE — EVIDENCE—SUFFICIENCY. Findings of due capacity to make a will and no undue influence are not sustained, where it appears that the testator was upon her death bed and under the influence and control of two comparative strangers, one of whom she distrusted and neither of whom had any claim upon her bounty, and who wrote the will for her and also witnessed it, naming one of them as the executor and both of them as residuary legatees, and making no provision for the testator's only relatives, one an incompetent sister whom testator had always cared for and sent money to; it further appearing that the testator was kept under the influence of opiates, submitted to the dictation of the residuary legatees, and in the opinion of an expert witness, was mentally incompetent at the time the will was executed.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 27, 1926, upon findings in favor of the defendants, in an action to set aside the probate of a will, tried to the court. Reversed.

*W. E. Henderson* and *Elledge R. Penland,* for appellant.

*Bogle, Bogle & Gates, Thomas Smith, Cassius E. Gates,* and *Edward G. Dobrin, amici curiae.*

[1] Reported in 260 Pac. 662.

ON REHEARING.

FULLERTON, J.—This cause was heard before a Department of this court on June 9, 1927, and an opinion handed down on August 5th following, directing a dismissal of the appeal for want of jurisdiction. (144 Wash. 564, 258 Pac. 507.)

A petition for rehearing, accompanied by a supplemental transcript supplying the defects noticed in the opinion, was filed and subsequently granted. As the record now appears, we are of the opinion that the dismissal was improvidently granted.

The appellant instituted proceedings to contest a will. It was heard by the trial court on March 22 and 23, 1926. On March 27th, the court made and entered its findings of fact and conclusions of law, and on the same day entered a judgment dismissing the proceedings. The notice of appeal was served, and a bond on appeal filed five days thereafter. Twenty-one days after the serving of the notice of appeal, the appellant served and filed a statement of facts, which the court, after allowing certain proposed amendments, certified on May 22, 1926.

The appellant did not, however, file with the clerk of the trial court a transcript of the record or his brief within ninety days after the entry of the judgment, nor did he transmit to this court the transcript, statement of facts and brief within four months from that time. There was, however, no untimely delay. The records reached this court in time for assignment for hearing at the earliest session of the court it could have been heard had the record been timely transmitted.

[1] There are certain steps in the progress of an appeal which this court has felt compelled to regard as mandatory. Owing to the somewhat positive nature of the terms of the statute, we have held that the notice

of appeal must be given, the bond on appeal filed, and the statement of facts filed and served, within the time limits fixed by the statute. But with reference to the preparation and filing of the transcript with the clerk of the lower court, the preparation and filing of the briefs with that officer, and the transmission of the record to this court, we have regarded the statutory provisions as directory rather than mandatory, and have entertained appeals after somewhat long delays in this respect, when good cause for the delay has been shown.

Where a motion has been interposed on this ground, we have considered the circumstances, and have granted or denied the motion as we have felt the justice of the case required. But we have no case where we have dismissed an appeal on our own motion, when the mandatory requirements of the statute have been complied with and the delay has been in the procedure following these requirements. To collect the cases which embody these principles we think unnecessary. It would seem, indeed, that even a restatement of the governing rules is hardly necessary. We do so lest the impression be gathered from the Department opinion that we had departed from our heretofore announced holdings.

But we were wrong in our conclusion in the case. As the record then stood, it is true, there could have been no decision upon the merits; but, since the appellant had timely complied with all the mandatory requirements necessary to the perfection of the appeal, and was delinquent only in those requirements which we have termed directory, the mere delay in bringing the record to this court should have been ignored. The appellant should have been given an opportunity to correct the record, and the appeal dismissed only in the case he neglected or refused to comply with the op-

portunity.  Since, however, he has now corrected it, the merits of the appeal are before us.

[2]  On the merits of the controversy, we have felt constrained to take a different view from that reached by the trial court.  The record discloses that Martha J. Lee died in King county, state of Washington, on October 30, 1925, leaving an estate therein of the approximate value of $2,500; and also an estate in Lenoir county, state of North Carolina, consisting of real property, the value of which is not shown.  As her sole heirs at law, she left a sister, Annie Davis, and a nephew, Henry E. Dunn, both residents of the county and state last named.

Mrs. Lee left a purported will, executed some three weeks prior to her death, which was filed and admitted to probate in the superior court of King county.  The superior court of Lenoir county, North Carolina, appointed the nephew administrator of her estate, making no mention of the will.  The probate proceedings in this state antedated those in the superior court of North Carolina.  As before noted, the present proceedings were instituted by the nephew in contest of the will.

The original will is in the record.  It was drafted by filling in a printed form.  After the usual preliminary recitals, a clause directing the payment of debts, and a clause directing that the executor named therein settle the estate without the intervention of the courts, or the necessity of letters testamentary or of administration, it contains the following clause, (all that following the words, "Third, I give and bequeath unto," being in the handwriting of one of the witnesses to the will):

"Third, I give and bequeath unto Marie Majors my house, lot and household furniture, jewelry, to the extent of all I own.  To the Bahia Movement all stock owned by me now operating on the Frazier River.

"I bequeth to the Sojourner Truth Club all stock and dividends in the Submarine Gold Dredging Company. To the Seattle Orthopedic Hospil I bequeth main stock of Shale Oil Washington Company to the amount of $300, all dividends of same to be equally devided between Marie Majors and Cora Miller. Of my 4 Metro. Ins. policies, money in bank and benefit from the Sisters of Mys. Ten I request that I be fitting put away and the remainder be equally devided between Nella Carter and 'Mr. Rodgers' whom I name as my executor with full power of attorney alone."

The will makes no further bequests; all of the property of the testatrix being disposed of by the clause of the will quoted. The special clause nominating and appointing the executor, names him as "Mr. Harry R. Rodgers." The sole witnesses to the will are H. R. Rogers and Nellie R. Carter.

The record, as presented here, indicates that the "Mr. Rodgers," named as one of the residuary legatees of the will, the "Mr. Harry R. Rodgers" named as executor thereof, and the "H. R. Rogers" who was one of the witnesses to the will, are one and the same person. It likewise indicates that the "Nella Carter" named as a residuary legatee of the will and the "Nellie R. Carter" who was one of the witnesses to the will, are one and the same person. No explanation, however, is offered as to why these persons were differently designated in the different parts of the will. Neither Mr. Rogers nor Mrs. Carter were related to the testatrix, either by affinity or consanguinity, and the record does not disclose that either of them had any claim upon her bounty. Mr. Rogers was superintendent of the janitor work of a certain building in the city of Seattle, and Mrs. Lee was an employee therein. Mrs. Carter was not even a close friend, the record showing that Mrs. Lee distrusted her and had no confidence in her veracity.

Mrs. Lee had long suffered from a cancerous disease of the groin. She had no confidence in doctors or medicines, and took no form of treatment from these sources. She seemed to believe that the disease from which she was suffering was the effort of some power to eradicate "the poison" from her system, and that when the effort became effectual she would take on new and purified flesh and live forever on this earth. She gradually became weak and emaciated, finally becoming bedfast, at which time she was taken to the county hospital of King county, where she died three weeks later.

The will was executed on the day following her removal to the hospital. The part that Mr. Rogers or Mrs. Carter took in its immediate execution is not disclosed, further than it is shown that its written part is in the handwriting of Mrs. Carter, and that she and Mr. Rogers are its sole witnesses. Mr. Rogers, however, was instrumental in having her removed to the county hospital. Seemingly, it was necessary to obtain the consent of a county medical officer before she could be received at the hospital, and that officer states that Mr. Rogers, when applying for her reception, stated to him that he desired Mrs. Lee to make a will and wanted to get her away from the influences with which she was surrounded before she did so.

On the morning of the day Mrs. Lee was removed to the hospital, Mrs. Carter appeared at her home. A witness gave the following account of the subsequent happenings:

"I got up there that morning between nine and ten o'clock, and Mrs. Carter was very busy, and she was ordering what should be done and should not be done, and answering the 'phone and taking charge of everything and wouldn't let anybody do anything but herself; took charge of the papers and everything that she could come across that she thought—it seems she was

after valuable papers, and every once in a while the 'phone would ring and she would go to the 'phone, and it seemed to be Mr. Rogers on the other end of the 'phone the way she talked. She kept saying, 'Yes, Mr. Rogers, yes, Mr. Rogers,' and he was giving her instructions what to do and she was carrying them out. Q. And what would she say to Mrs. Lee when she got through talking over the 'phone? A. She would say, 'Mr. Rogers wants you to do so and so.' Mrs. Lee would say, 'Oh, all right.' Q. Did she seem to be under the absolute influence and control of Mr. Rogers? A. Yes, sir, she did. Q. What, if anything, was said about trusting Mrs. Carter with any money? A. Trusting her with money? Q. Yes, paying bills. A. Mrs. Carter looked over some of the bills. I remember now she had a fire insurance paper in her hand and she said, 'Mrs. Lee, this has been overdue for five months,' and Mrs. Lee says, 'Well, up there under the corner of my mattress you will find money to cover that. I think it is between fourteen or fifteen dollars there.' And Mrs. Carter got the money there. But she had hold of these insurance books the whole time I was there. She didn't lay them down, kept them in her hand. Q. What was said about 'phone bills or anything of that kind? A. Oh, Mr. Rogers rang up again and ordered the 'phone taken out, so she turned to Mrs. Lee and says, 'Mr. Rogers wants the 'phone taken out,' so Mrs. Lee says, 'All right.' Q. Was that before she went to the hospital? A. Yes, that was the morning before she went, the morning of the day that she went.''

Opiates were administered to Mrs. Lee on her admission to the hospital, and she was kept largely under their influence until her death. There was testimony of an expert, answering to a hypothetical question, that Mrs. Lee was incompetent to make a will at the time the will was executed, and there is testimony to the same effect from lay witnesses, although the latter seemed to attribute her incapacity to the opiates administered to her rather than to her weakness of body and mind.

The will is an unnatural one. The sister mentioned was, and for many years had been, incompetent. She formerly lived with Mrs. Lee in another state, during which time Mrs. Lee supported her in her home. On coming to this state, Mrs. Lee sent the sister to North Carolina, from which time until her death she devoted the income of the property in North Carolina to the sister's care. She also from time to time during her residence in this state sent money and clothing to the nephew to be used for her support. The sister is not mentioned in the will. Her natural right to inherit was ignored, and the property given to those who, as we have shown, have no claims upon the bounty of the testatrix. The fact within itself, it is true, affords no conclusive or sufficient proof that the will was not the will of the testatrix, but it is a fact that may always be considered in determining whether the will is the result of undue influence, and sometimes it is important enough to turn the scale. We think it entitled to especial weight in the particular instance. It is contrary to human experience to suppose that the testatrix, had she understood the effect of her act, would have given her property to strangers, leaving destitute this helpless sister, who had for so many years been an object of her care.

The evidence as a whole, we think, clearly shows that the will was not the will of the testatrix, but was rather that of the principal beneficiaries, and that it should be set aside.

The judgment is reversed, and the cause remanded with instructions to set aside the will and proceed with the administration of the estate of the deceased as if she had died intestate.

All concur.